[S. F. No. 968.  In Bank. — December 4, 1901.]

# W. S. CHAPMAN, Appellant, v. THOMAS E. HUGHES et al., Respondents, and E. W. CHAPMAN, Appellant.

TRUST — TRANSFER BY TRUSTEE — GOOD FAITH OF PURCHASER — FINDING
AGAINST EVIDENCE — CONSIDERATION — PRIVATE DEBT — NOTICE —
AGENCY. — A finding that a transfer of trust property by a trustee,
to his daughter-in-law was made to her as a *bona fide* purchaser for
value, without notice of the trust, or of the rights of the plaintiff as
a beneficiary, is against evidence, where proof of the consideration
was not satisfactory, and the evidence in part showed a deed of gift,
and in part that there was some settlement of a private debt of a
firm, which consisted of the trustee and his son, the husband of the
grantee, and it appeared that the husband acted as her agent in the
transaction.  The full knowledge of her agent, acting within the
scope of his authority, charged her with notice of the invalidity of
the conveyance, which was void, both as being in contravention of
the trust, and also as having been made in payment of a private
debt of the trustee.  Such deed was voidable as to her, as one taking
with notice, at the instance of the *cestui que trust*.

ID. — ESTOPPEL IN PAIS — CONSENT OF CESTUI QUE TRUST — PLEADING —
FINDING. — If the *cestui que trust* knew of and assented to the con-
veyance from the trustee to his daughter-in-law, an estoppel *in pais*
would be raised against him, and he would not be heard to disavow
an act to which he had formally assented, where the parties changed
their condition upon the assurance of his consent.  But such estoppel
*in pais*, to be available, must be pleaded, proved, and found, and
cannot be considered in the absence of a pleading and finding to
support it.

ID. — SUIT IN EQUITY BY BENEFICIARY — ACCOUNTING — AVOIDANCE OF
TRANSFERS BY TRUSTEE — AUGMENTATION OF TRUST FUND. — In a suit
in equity, brought by a beneficiary having an interest in trust prop-
erty, for an accounting against his trustee, and to avoid transfers
made by the trustee of the trust property to other parties made
defendants, all transfers thereof made by the trustee to any of
the co-defendants without consideration, or to persons taking
with notice of the plaintiff's rights under the trust, must go to
augment the trust fund, to abide an equitable adjustment of
rights as between the plaintiff and his trustee, upon the accounting
between them.

ID. — TRANSFER AS COLLATERAL SECURITY — PROTECTION OF TRANSFEREE —
RESIDUE SUBJECT TO TRUST. — Where a transfer of property by the
trustee, as collateral security for indebtedness, is protected, and can-
not be assailed *in toto*, the residue of the property remaining after
the debt is paid must go into the trust fund.

Id. — Transfer of Notes and Mortgages — Good Faith of Assignees — Notice — Attorney of Trustee — Subsequent Employment by Assignee. — Where securities, consisting of notes and mortgages, were transferred for value by the trustee to purchasers who took without actual notice of the trust, such purchasers are not chargeable with notice by reason of the knowledge acquired by an attorney, who acted solely as attorney of the trustee in relation to the transfer, though such attorney was afterwards employed by a bank which became a second assignee of the securities for value, without knowledge of the trust.

Id. — Transfer for Less than Face Value — Actual Value not Shown. — The fact that securities of the face value of thirty-one thousand dollars were transferred by the trustee for a cash value of twenty thousand dollars is not indicative of fraud or want of good faith in the transaction, where there is no evidence tending to show the actual value of the securities.

Id. — Finding against Admission of Pleadings. — Where the pleadings admitted that the trustee had made certain conveyances to his wife, a finding contrary to such admission, that he had made no such conveyances, must be set aside.

Id. — Contracts of Plaintiff and Third Party with Trustee — Set-off — Accounting — Evidence — Former Adjudication — Superseded Contract — Collateral Findings. — Where the plaintiff sought an accounting under a contract with the trustee to divide with the plaintiff the net proceeds of lands purchased in the trustee's name, after repaying the purchase-money from sales thereof, and to divide the residue of the lands, and it appeared that plaintiff also agreed that the indebtedness of a third party to the trustee remaining due after an accounting under a deed of trust should be offset against the plaintiff, the rights of the parties to an equitable accounting and set-off, according to the facts upon competent evidence, are not concluded by a former decree, in an action by the plaintiff and such third party against the trustee as an alleged partner, for an accounting under a former syndicate agreement, in which the defendant pleaded and the court found that the syndicate agreement was canceled and superseded without performance thereof by such trust deed, and by an agreement with the plaintiff. Collateral findings in the former action, that the trust deed was modified as alleged by the defendant, are not conclusive; and such former decree is not admissible in evidence against the plaintiff and such third party.

Id. — Estoppel by Verdict or Judgment — Immaterial and Collateral Issues. — While a general verdict or judgment operates as an estoppel as to such matters as were necessarily considered and determined, it is never conclusive upon immaterial or collateral issues.

Id. — Rights of Beneficiary — Accounting of Trustee for Value — Insolvency — Finding — Enforcement of Trust. — The beneficiary is not concluded by a finding of the court against an allegation of the insolvency of the trustee, who offered to account for the value of the lands disposed of; and, without regard to the benefits or injuries

which may follow, the beneficiary is entitled to enforce the trust agreement to the letter, and to avoid every disposition of lands contrary thereto, of which the vendee had knowledge or notice.

ID. — MONEY JUDGMENT — ESTOPPEL. — The beneficiary cannot be compelled to accept a money judgment awarded against the trustee, and is not estopped thereby to recover property wrongfully disposed of by the trustee.

ID. — EXCHANGE OF PROPERTIES BY TRUSTEE EMPOWERED TO SELL — CHARGE OF CASH TO TRUSTEE — AVOIDANCE OF EXCHANGE. — The power of the trustee to sell does not include a power to exchange the trust property for other lands, and where such exchange was effected with one who had knowledge of the terms of the contract between the trustee and the plaintiff, the plaintiff, as beneficiary, is entitled to avoid the exchange, notwithstanding the trustee charged himself with cash on account thereof.

ID. — CONVEYANCES BY WAY OF MORTGAGE — VALUABLE CONSIDERATION — PRE-EXISTING DEBT — NOTICE — BURDEN OF PROOF — AGENCY. — Conveyances by the trustee, by way of mortgage, to secure a pre-existing debt for moneys loaned to the trustee, were for a valuable consideration; but the burden resting upon the plaintiff to prove knowledge or notice of his rights is sustained by proof that the agent who acted for the mortgagee in the transaction had such knowledge, which must be imputed as notice to the principal.

ID. — PAYMENT OF PURCHASE-MONEY BY TRUSTEE — RESULTING TRUST — EXPRESS TRUST. — Notwithstanding that the entire purchase-money for the land was paid for by the trustee, and that he had a beneficial ownership therein, and that no trust could have resulted to the plaintiff by operation of law, yet the plaintiff, who is not seeking to enforce a resulting trust, may enforce his rights under an express trust formally declared by an instrument in writing, signed by the trustee.

ID. — ASSUMPTION OF MORTGAGE BY TRUSTEE — PART PAYMENT — ACCOUNTING — REIMBURSEMENT. — Where, by the agreement between the parties, the trustee was to discharge a mortgage, upon payment of which he was entitled to reimbursement from the proceeds of sales of the property, if only part of the mortgage was paid, if he should be charged in the accounting with the residue, provision must also be made therein for reimbursing him.

ID. — CONSOLIDATION OF ACTIONS — SINGLE JUDGMENT — DEFENDANTS NOT IN PRIVITY — REVERSAL UPON APPEAL — NEW TRIAL LIMITED. — Where the record shows the consolidation of several actions which were tried as one, and a single judgment entered, involving the rights of defendants between whom there is no privity or community of interest, where the judgment is reversed and a new trial is granted, a defendant who has established the validity of his purchase from the trustee will not be required to litigate the matter anew, but the new trial will be limited to issues between parties as to whom the judgment was erroneous, and confined to the subject-matter of findings held not sustained by the evidence.

APPEALS from a judgment of the Superior Court of Fresno County.   J. R. Webb, Judge.

The record shows the consolidation of three several actions, numbered 4343, 4532, and 5268, in each of which W. S. Chapman was plaintiff and is appellant, and in each of which Thomas E. Hughes was a defendant.   In the action numbered 4343, E. W. Chapman is a party defendant and appellant. Other defendants were joined in each of the actions, the most numerous defendants being made such in the action numbered 4343.

Further facts are stated in the opinions of the court.

Garret W. McEnerney, George H. Maxwell, and T. M. Osmont, for Appellants.

Frank H. Short, and Stanton L. Carter, for Estate of Matilda B. Hughes, deceased, Respondent.

George E. Church, for O. J. Woodward et al., Respondents.

L. L. Cory, for Thomas E. Hughes et al., Respondents.

Horace Hawes, for Fresno Loan and Savings Bank, Respondent.

Stearns & Elliott, for Madera Canal and Irrigation Company, Respondent.

HENSHAW, J.—In the decision in this case rendered in Bank, April 7, 1900, it was held that the finding of the trial court upholding the deed of conveyance made by Thomas E. Hughes to his daughter-in-law, Matilda B. Hughes, was unsupported, and that the conveyance was void, or, at least, voidable at the instance of the *cestui que trust*, Chapman.   A rehearing was granted for further consideration of this single proposition.   The finding of the court was, that the deed was made pursuant to a sale by Thomas E. Hughes to Matilda B. Hughes for a valuable consideration, and that at the time of the sale she had no notice of any right, title, or claim of interest of the plaintiff in or to any portion of the land.   The two facts thus declared by this finding are,—1. That a valuable consideration was given; 2. That the grantee took without any notice of plaintiff's rights in the property.

1. The evidence as to consideration is to the last degree unsatisfactory. After a most careful reading of all the testimony upon the point, it is impossible to say what consideration Matilda B. Hughes paid for the land. The original record upon the books of Hughes shows that the deed was a gift to his daughter, and his first evidence upon the trial of the case was to this effect. Subsequently, he modified his evidence, and testified that, on thinking it over, he remembered that there was "quite a consideration" for the deed; that his firm was indebted to his daughter-in-law, and that on account of the deed she canceled "some of the indebtedness," and that there was a "kind of a settlement" between them. What indebtedness she canceled, and to what extent, nowhere appears. What kind of a settlement was had, is not disclosed.

2. But, passing this consideration, with the concession that the evidence, though unsatisfactory, is still sufficient to support the finding as to consideration, and turning to the second proposition, namely, that the grantee had no notice of plaintiff's rights, there is not only nothing in the evidence to support this finding, but the direct and positive evidence of the parties interested in upholding this deed is against it. William M. Hughes was the son of Thomas E. Hughes, was his partner in business, and in the particular business touching the sales of these lands, knew all about the condition of the title, and of the contracts and trust existing between plaintiff and his father. He acted for his wife, as her agent, in the matter, or as he phrased it, "the Tillie B. Hughes land was transacted by myself." The full knowledge which the agent thus possessed was knowledge chargeable to the principal in a transaction managed wholly by him and within the scope of his authority, and the situation thus presented is that of a trustee who conveys trust land to one taking with notice, in extinguishment of the private debt of that trustee. Such a conveyance is not only void, as being in contravention of the terms of the trust (Civ. Code, sec. 870), but it is void upon consideration of the general equitable principle that a trustee cannot so sell in payment of his own debt. (*Frink* v. *Roe*, 70 Cal. 296.) And where the conveyance is made to one taking with notice, it will be voidable at the instance of the *cestui que trust*.

Such is the case here presented. But it is urged that the evidence of the Hugheses is that plaintiff, Chapman, knew of and assented to this conveyance. If this should be proven

and found to be true, doubtless an estoppel *in pais* would be raised against plaintiff, and he would not be heard to disavow the act to which previously he had formally assented, the parties having changed their condition upon the assurance of his consent. But the answer to this is, that such an estoppel should have been pleaded, proved, and found. It was not pleaded, nor is there any finding in the case to support the position.

It is concluded, therefore, that the finding under consideration is unsupported by the evidence, and must fall, and with it must fall the deed to Matilda B. Hughes.

Consolidated in the transcript were appeals from three separate actions which were united and tried together by order of the court. In deciding the action, the court entered separate findings, judgments, and decrees. To the end, therefore, that the record in this case, or in these cases, may be made free from uncertainty, it is ordered that the judgments appealed from be reversed and the cause or causes remanded for further proceedings in conformity with the views here expressed and with those expressed in the opinion of this court rendered April 7, 1900.

Garoutte, J., McFarland, J., Van Dyke, J., and Temple, J., concurred.

The following is the opinion rendered in Bank, April 7, 1900:—

GAROUTTE, J.— This is a suit in equity, brought by plaintiff for an accounting against his trustee, Thomas E. Hughes, and his co-defendants, to whom the trustee made divers conveyances and assignments of the trust property, and who took, as plaintiff claims, with notice of the trust and of plaintiff's rights and equities. The case has been once decided by this court. The plaintiff, and also certain of the defendants, filed petitions for a rehearing. These petitions prayed for a rehearing only as to certain particular matters specified therein, whereupon the judgment of the Department was declared vacated, and a rehearing was ordered as to the matters covered by these two aforesaid petitions. The case is now before us for further consideration.

We first pass to the question involved in the petition for a rehearing filed by the defendants O. J. Woodward and the

First National Bank of Fresno. The trial court made a finding of fact to the effect that the John Brown mortgages, together with the indebtedness secured thereby, were assigned to Woodward for a valuable consideration and in good faith, and that said First National Bank of Fresno is the owner and holder thereof, and that said assignment of these notes and mortgages was made without any knowledge or notice on the part of said Woodward or said bank of any rights of plaintiff thereto. Upon examination of the evidence, we are satisfied it is sufficient to support this finding. As to that portion of the finding bearing upon the ownership of these securities, Woodward testifies that Hughes said he could have the notes for twenty thousand dollars. At that time Hughes owed him fifteen thousand dollars. Woodward says: "At different times, Hughes told me that if I paid him the other five thousand dollars, the notes were mine. He told me that he owed Mr. Dorn one thousand dollars, which could be applied as payment upon the five thousand dollars." The witness then testifies that he paid Dorn one thousand dollars and charged it to Hughes. Then follows his evidence as to an additional transaction, which he claimed made up the balance of the twenty thousand dollars, which was to result in a change of ownership of the securities. He also states that the arrangement was finally consummated with Mr. Hughes, February 23, 1892. Hughes testified directly that these securities were sold to Woodward for twenty thousand dollars. It may be conceded that this evidence is not absolutely convincing, and that it was somewhat weakened by the cross-examination of these two witnesses. At the same time, such concession is not sufficient to justify this court in setting aside the finding of the trial court based upon it. It is next contended that Wooodward bought these securities with notice of plaintiff's rights therein. There is no direct evidence supporting this claim. It is insisted that his attorney (Cory) had notice, and that Cory's notice was his notice. But at that time Cory was not Woodward's attorney in this litigation, and his employment by Hughes to examine the *status* of the title of the land involved in these mortgages could in no way bind Woodward. It is also contended that the mere fact of a sale of these securities of the face value of thirty-one thousand dollars for twenty thousand dollars is indicative of fraud. There is no evidence tending to show their actual value, and for this reason, if for no other,

there is no merit in this contention. For these reasons the court's finding supporting the validity of this transaction will not be disturbed. Upon the grounds here stated, the assignment of the notes and mortgages by Hughes to the First National Bank to secure the loan of $4,605 is also sustained.

The transfer to King amounted to nothing, and the property therein involved should go into the trust fund. Hughes himself would not testify that he was ever paid one dollar by King for the property. He testified: "The fact is, that the sale never went through. The deed was delivered and put on record, and he has never made any deed back yet. I have the deed among my papers. The sale never went through. Mr. King don't claim the property. It is practically in the same condition as though I had never made any conveyance to him." Again, he says: "He [King] does not claim any interest in it. He is willing to deed it back whenever the thing is settled so as to know how to do it. The transfer from King to my son was made at my request." Taking all the evidence of Hughes together, it is entirely apparent that no sale was ever consummated, and the land involved in the transaction should go into the trust fund. The transfer to the son of defendant Hughes by King, falls with the balance of the transaction.

Upon the former hearing it was held by this court that certain conveyances made by Thomas E. Hughes to his son, William M. Hughes, were void, and that a one-half interest in the property therein involved should go to the trust fund. There is hardly a question as to the invalidity of these transfers. William M. Hughes, the son, and the defendant Hughes, the father, were partners in business. The son knew all about the trust agreement, and he entered into these transactions with full knowledge of plaintiff's rights. These transfers being void, all of the property covered by them should go into the trust fund. The assignment to the son, by defendant Thomas E. Hughes, of certain notes and mortgages was also void for the reasons just given. Indeed, the agreement between them, as disclosed by the evidence, was, that the son should take the assignment of these securities subject to the rights of plaintiff, Chapman.

The conveyance by Hughes to his daughter-in-law is also void. The transaction was negotiated by the son in her behalf, and the son's knowledge of plaintiff's rights was her knowledge. There is some slight evidence tending to show that plaintiff,

by subsequent parol consent, recognized the validity of this transaction. But this is a mere matter of evidence, strong or weak, and in no way tends to support the finding of fact made by the trial court upholding the validity of the conveyance. The finding of the trial court in this regard is not supported by the evidence. Upon the same evidence, at another trial, this property should go into the trust fund.

We conclude that the evidence is sufficient to sustain the validity of the transaction with A. D. Colson. The evidence of Colson to this point is sufficient to sustain the finding of fact made by the trial court, and the reference made by Hughes in his testimony to the acts of Colson's attorney is too vague and indefinite to fasten notice upon Colson, the client.

As to the water rights transferred to Maxfield, the finding of the court is sufficiently supported by the evidence. At the same time, the finding is unsatisfactory, in not declaring that the transfer was made as collateral security. The evidence all shows this to be the fact. The water rights being held by Maxfield as security, upon satisfaction of the debt whatever balance of the property may be remaining should go into the trust fund.

The general finding of the court that none of the hypothecations and assignments made by Hughes of the trust property was made in fraud of plaintiff's rights, and that plaintiff has suffered no damage, loss, or injury, by any of the trustee's acts, is not supported by the evidence. This fact is necessarily apparent, in view of what has already been said in this opinion as to the character of many of these assignments and hypothecations.

The finding of fact or conclusion of law to the effect that plaintiff and Thomas E. Hughes "are each entitled to an undivided one half of all said real and personal property, subject to the encumbrances stated and liens thereon as stated," should be set aside. All the property, real and personal, subject to encumbrances should be placed in the trust fund to abide an equitable adjustment of the respective rights of Chapman and Hughes. The succeeding finding, to the effect that plaintiff and Thomas E. Hughes are each the owner of an undivided interest in the securities, etc., must be construed, in view of what has just been said, to the effect that all of the property should go into the trust fund.

It is admitted by the pleadings that Thomas E. Hughes

made conveyances of portions of this realty to his wife. The answer sets out that she was a *bona fide* purchaser for value. The court found against the admission, and declared there were no such conveyances. Practically, the matter is immaterial. But, in view of the conflict between the finding and the admission, the finding is set aside.

There remain but a few other matters suggested by appellant's petition for a rehearing. They appear to be of minor importance, and are not discussed by him at length in any of the various arguments made.

It is further claimed that neither the answers nor the findings are sufficiently clear and explicit in pleading and finding upon the issue of *bona fide* purchaser for a valuable consideration. At the trial the issue was litigated with earnestness and at great length. The pleadings appear to have been recognized as sufficient to squarely present the issue. The findings of fact upon the issue substantially follow the allegations of the pleadings. Under these circumstances we hold the pleadings and the findings in this regard to be sufficient in form.

The following views were enunciated by Department Two, speaking through Mr. Justice Henshaw, upon the former decision of this case. They are now approved by this court in Bank and made a part of this opinion:—

"W. S. Chapman commenced this action against Thomas E. Hughes for an accounting, under an agreement, according to the terms of which the latter advanced ninety-five thousand dollars for the purchase of certain lands, taking the title thereto, and was to sell these lands, reimburse himself for the purchase-money and all other necessary and proper outlays, after which the profits and the remainder of the unsold lands were to be equally divided between himself and Chapman. Hughes, by his answer, did not dispute the terms of the agreement, nor question Chapman's right to an accounting, but, with other allegations, he set out an agreement made between himself and plaintiff, whereunder he was entitled to offset against any sum due from him to W. S. Chapman any indebtedness existing in his favor against E. W. Chapman under another agreement touching the management and sale of lands between Hughes and E. W. Chapman. E. W. Chapman thus came into the case as a party defendant. Afterwards, the plaintiff, W. S. Chapman, filed two supplemental complaints and brought two separate actions, alleging that Hughes

had made conveyances of parts of the lands and of notes and mortgages in contravention of the agreement and in fraud of his rights. The grantees under these conveyances were impleaded and brought in, and a decree was sought annulling these deeds and assignments. After trial and submission of the cause, the court ordered its commissioner to take an accounting between Hughes and E. W. Chapman and report the result. The commissioner found that E. W. Chapman was indebted to Hughes in the sum of $114,825.30. The court reduced this amount, and found an indebtedness from E. W. Chapman to Thomas E. Hughes of $67,741.46. It further found that Thomas E. Hughes was indebted to the plaintiff, W. S. Chapman, in the sum of $55,551.46. Under the agreement above referred to, the indebtedness of E. W. Chapman to Hughes was set off against the indebtedness of Hughes to W. S. Chapman, and Hughes was given a judgment for the difference, amounting to something over twelve thousand dollars. The court further upheld the questioned conveyances made by Hughes as having been executed to purchasers in good faith and for value, and decreed that the unsold property was owned equally by W. S. Chapman and Hughes.

"Upon this appeal the principal attack is made upon the findings of the court upholding the various conveyances made by Hughes, which plaintiff insists were in violation of the terms of the trust agreement and in fraud of his rights, and also upon the ruling of the court admitting a certain judgment roll and giving it the force of an estoppel against the plaintiff. This last question is of vital consequence in the case, and may receive first attention.

"Prior to the commencement of this litigation, W. S. and E. W. Chapman had commenced an action against the defendant Hughes for an accounting with reference to certain real estate transactions under an agreement which then existed between the parties. The facts and the decision of this court upon the appeal in that case will be found in *Chapman* v. *Hughes*, 104 Cal. 302. The relief sought by the plaintiffs in that action was for an accounting under the so-called 'syndicate agreement,' which they insisted constituted themselves and Hughes copartners. Their whole cause of action rested upon the existence of and the transactions under the 'syndicate agreement.' Hughes, defending, pleaded that the relation of partnership did not exist, that the syndicate agreement

did not create a partnership, but that it expired by limitation on August 31, 1889, and that the syndicate agreement was canceled, annulled, and set aside by later agreements of the respective parties, 'as is more fully set forth in the contracts hereinafter particularly set forth.' As to these contracts which Hughes pleaded had been entered into with the effect to cancel and annul the syndicate agreement, one was with and between Hughes, E. W. Chapman, and Richard L. Dixon. It was in the form of a trust deed made by E. W. Chapman to Dixon as trustee. The trustee was to hold the legal title to the lands for two years, or until an earlier termination of the trust by the fulfillment of its purposes, or by the joint revocation of the parties. Hughes, the party of the third part, was diligently to use his personal efforts and experience to effect sales of the land, and after the payment of certain specified sums Chapman and Hughes were to become joint owners in the funds, notes, and mortgages arising from the sales of the lands, and tenants in common of all lands and water rights not sold. Having thus pleaded that the syndicate agreement had been canceled and superseded by the trust deed (and by a certain other agreement with W. S. Chapman which it is not necessary here to particularize), and that no sales of or transactions in the land had been made or had under the syndicate agreement, Hughes added: 'That, subsequent to the execution of said agreement and trust deed of June 20, 1888, the said Richard L. Dixon, the trustee therein named, resigned and relinquished the trust so reposed and vested in him, and the trust thereby created was revoked and terminated, and the legal title to the property therein described was reconveyed and reassigned to and vested absolutely in said E. W. Chapman, subject to the mortgages thereon, but none of the other agreements or conditions contained in said agreement and trust deed were revoked, canceled, annulled, or terminated, but the same remained and continued in full force and effect, and the property therein described was sold and disposed of under said agreement by this defendant, and the moneys and notes and mortgages received, taken, and realized from such sales were paid, given, and delivered to and retained by said E. W. Chapman, and under the terms and conditions of said agreement this defendant is entitled to receive from said E. W. Chapman, upon a settlement and adjustment of their accounts, more than eighty thousand dollars as his share of the profits of the sales

of said lands, . . . and his expenses and commissions in making such sales provided in and by said agreement.' After trial of that cause, the court found, in accordance with the terms of Hughes's defense, that the syndicate agreement had in fact been canceled, annulled, and set aside by the later agreements between the parties, of which the trust deed was one. This determination of the trial court was upheld upon appeal to this court. (*Chapman* v. *Hughes*, 104 Cal. 302–305.) It is to be borne in mind that the decision of the trial court was, that the making of the agreement with W. S. Chapman, and of the trust deed with E. W. Chapman and Dixon, was understood to operate, and did operate, as an absolute revocation and cancellation of the syndicate agreement. But the court found additionally, as defendant had pleaded, that subsequent to the execution of the trust deed, Dixon, the trustee, resigned and relinquished his trust, and the trust thereby created was revoked and terminated, and the legal title to the property was reconveyed and reassigned to and vested absolutely in E. W. Chapman, but that none of the other agreements or conditions in the agreement and trust deed were revoked, canceled, or terminated, but they all remained and continued in full force and effect.

"The foregoing statement of facts is necessary to the understanding of the question here presented. Upon the trial of the present action, it will be remembered that it was conceded to be Hughes's right to offset against any sum due from him to W. S. Chapman any sum found due to him from E. W. Chapman on account of their land transactions. The basis of Hughes's right to an accounting against E. W. Chapman, and of his claim of indebtedness against E. W. Chapman, is this trust deed. By cross-complaint, Hughes pleaded these matters. For answer, the Chapmans denied that any of the terms or agreements of the trust deed were continued in force after the reconveyance by Dixon to E. W. Chapman of the land, and alleged that the reconveyance was made by a written instrument signed by all the parties to the trust deed, which instrument was set forth at length.

"Upon the trial of the cause, it was contended by the Chapmans that the question whether the trust deed and all its terms and conditions had been revoked by the parties was one open for the reception of evidence and one calling for a construction of the revocatory instrument above referred to. Upon the other

hand, Hughes offered in evidence the judgment roll in *Chapman* v. *Hughes*, 104 Cal. 302, insisting that the judgment in that case foreclosed the parties, and estopped the Chapmans from raising this question. The court admitted the judgment roll in evidence, and it is not disputed that it was received in evidence in accordance with Hughes's contention that it operated as an estoppel. The finding of the court following its reception in evidence was, that, though Dixon had reconveyed to E. W. Chapman, all of the other terms and conditions of the trust deed remained and were continued in full force and effect, and that consequently Hughes was entitled to an accounting, in accordance with them, of Chapman's transactions with the land. An attack is made upon this finding as being unsupported by the evidence, and upon the ruling of the court in admitting the judgment roll. The admissibility of the evidence and the soundness of the court's finding depend, then, upon the determination whether or not the judgment in the earlier case of *Chapman* v. *Hughes*, 104 Cal. 302, adjudicated this question so as to estop the parties in this action from further litigating it. We think it did not.

"By section 1911 of the Code of Civil Procedure, that only is deemed to have been adjudged in a former judgment which appears upon its face to have been so adjudged, or which was actually or necessarily included therein or necessary thereto. The adjudication in *Chapman* v. *Hughes*, 104 Cal. 302, was simply and directly to the effect that there had been no transactions in the land under the syndicate agreement, and that the syndicate agreement had been wholly canceled and superseded by later contracts between the parties. The judgment which necessarily followed from this was one denying to plaintiff an accounting under the syndicate agreement. It is true that Hughes, by his answer, pleaded that the trust deed which he said, and which the court found, operated to annul the syndicate agreement had in its turn been modified, and it is true, also, that the court made a finding to this effect; but this was an entirely immaterial allegation in Hughes's answer and defense. It tendered no material issue in the case. A determination upon it one way or the other would not, and could not, have affected the court's decision. When the court had found, as it did, that the syndicate agreement was superseded by the trust deed, it mattered not at all to that action what thereafter might have become of the superseding contract. The

immateriality of the issue, and of the finding of the court upon it, is clearly seen when one considers that if, upon appeal, the Chapmans had convinced this court that this finding was wholly unsupported by the evidence, it would not have operated to effect a reversal. If that finding had been pressed upon the attention of this court as being erroneous, it would not have merited consideration, because the conclusive answer would have been, that, whether erroneous or not, the judgment was in no way dependent upon it. While a general verdict or a judgment operates as an estoppel as to such matters as were necessarily considered and determined, it is never conclusive upon immaterial or collateral issues. (*McDonald* v. *Bear River etc. Co.*, 15 'Cal. 149; *Fulton* v. *Hanlow*, 20 Cal. 456; *Lillis* v. *Emigrant Ditch Co.*, 95 Cal. 553; *Packet Co.* v. *Sickles*, 5 Wall. 592; Herman on Estoppel and Res Judicata, sec. 275; Wells on Res Judicata, sec. 295.)

"It follows, therefore, that the judgment was not conclusive upon the parties in this particular, and the question whether or not the terms and conditions of the trust deed continued in force was not *res judicata* between the parties, but remained an open question, which the court in this case was called upon to decide upon its merits. It was therefore error for the court to have admitted the judgment roll in evidence.

"Under this conclusion must fall to the ground the whole account stated between Hughes and E. W. Chapman, since Hughes's right to an accounting was a question first to be determined by the court, upon competent evidence, before the taking of an account could be ordered; and as the judgment in this case offsets against the amount which the court finds due from Hughes to W. S. Chapman, the larger amount which it finds due to Hughes from E. W. Chapman, with the result that a judgment in favor of Hughes for over twelve thousand dollars is given, it also follows from the foregoing that this judgment must be reversed and the cause remanded.

"But, in contemplation of a new trial, other points and propositions advanced by appellants merit consideration. These questions arise out of certain sales, transfers, and assignments made by Hughes of parts of the land, and of mortgages and notes, proceeds of the sales of parts of the land. It cannot be assumed, however, that the evidence which may be adduced at the second trial concerning these matters will be identical with that shown in the present record, and therefore the obser-

vations of the court relative thereto can only be considered with reference to the facts as they now appear. And first, generally, as to the sales of land made by Hughes which are attacked as being in fraud of plaintiff's rights. Some of these sales were made to relatives of Hughes; some, it is contended, were mere gifts made without valuable consideration; as to all, it is charged that the vendees took with notice or with actual knowledge of plaintiff's rights. But in each of these cases the defendant Hughes charged himself, in his account with Chapman, with what appears to have been the fair and full value of the land so disposed of. At any rate, we fail to find any attack upon this particular point, and the court seems to have regarded these charges as being adequate. If, then, the defendant Hughes were solvent, and able to respond promptly to any sum which might be found against him upon the accounting, it would really matter little to the plaintiff whether he were to be allowed the fair value of his share of these lands in money, or whether the sales should be set aside as fraudulent, and the vendees charged as involuntary trustees, holding an undivided one-half interest in the lands for the plaintiff. But there are other considerations which make the matter of some consequence. First, plaintiff charges that the defendant Hughes was and is insolvent, and though the finding of the court is against him upon this point, he is, of course, not obliged to accept it. If in fact Hughes is insolvent, or should prove unable to respond promptly to such money judgment as might be awarded against him, it would indeed be a matter of much consequence to the plaintiff to reduce an uncollectable money judgment by the value of the lands in question, and have those lands made available to his ends. And again, without regard to the benefits or injuries which may follow, the plaintiff occupying the position of a beneficiary under the trust agreement between himself and Hughes, Hughes, being his agent and trustee, is entitled to enforce the agreement to the letter and to insist that every transaction in the land which is in violation of the terms of the agreement, and of which fact the vendee had knowledge or notice, may be avoided.

"By one of the transactions to which general reference has just been made, defendant Thomas Hughes conveyed to his son, William M. Hughes, a portion of the land embraced within

the agreement between himself and Chapman. The convey-
ance was made after the commencement of this action. The
consideration for it was the son's equity of interest in the
Hughes block and in the Hughes hotel. Thomas Hughes tes-
tified that he received no cash; that he made the contract with
him to clean up all his interest in the partnership business;
that the consideration was eight thousand dollars, and that he
entered that as so much received under a cash sale. The find-
ing of the court is, that William M. Hughes had no notice or
knowledge of plaintiff's right in the property; that the con-
veyances were made without intent to defraud plaintiff, and
were made in good faith and for a valuable consideration.
But so much of the finding as declares that the defendant
William M. Hughes had no notice or knowledge of plaintiff's
rights in the property is unsupported by and contrary to the
evidence. There is evidence tending to show that he did not
know that the particular property in question was affected by
the suit for an accounting which Chapman had brought against
his father, but he testified that he was his father's partner, was
familiar with his business, and had knowledge of the terms of
the contract between his father and Chapman. He knew,
therefore, that by the terms of the trust his father's power was
limited to the right to sell. 'Sale,' in law, has a well-defined
meaning, and trustees empowered to sell real estate are not
authorized to exchange it for other lands. (*Ringgold* v. *Ring-
gold*, 1 Har. & G. 11.[1]) As to one who has notice of the terms
of an express trust, which terms are expressed in the instru-
ment creating the estate, every transfer or act of the trustee
in contravention of the trust is absolutely void. (Civ. Code,
sec. 870), and every one to whom property is transferred in
violation of a trust holds the same as an involuntary trustee
under such trust, unless he purchased it in good faith and for
a valuable consideration. (Civ. Code, sec. 2243.) Under the
evidence, this transaction between father and son was but an
exchange of properties, and while it is true that the father
charged himself in his account with Chapman with the sum
of eight thousand dollars as though it were cash received, the
fact remains that the transaction was not for cash, and was
not a sale at all.

"Thomas E. Hughes conveyed to Miss Bernhard, now Mrs.

[1] 18 Am. Dec. 250.
CXXXIV. Cal.—42

Patterson, certain pieces of property. The conveyances were in fact mortgages given as additional security to Miss Bernhard for moneys which she had loaned to Thomas E. Hughes. However different the rule may be in other states, it is well settled in this, that one who takes a mortgage to secure a pre-existing debt is a purchaser for a valuable consideration. (*Frey* v. *Clifford*, 44 Cal. 335; *Connecticut Life Ins. Co.* v. *McCormick*, 45 Cal. 580.) So much having been established, it was incumbent upon the plaintiff to show that she took this conveyance with notice or knowledge of his rights. There is no evidence to establish that she had any actual knowledge, but her agent in the transaction was William M. Hughes, and while, under the evidence, he is not chargeable with notice that the particular land conveyed was embraced within the accounting suit, yet, as has been before said, he did have full knowledge of the terms of the trust agreement between his father and Chapman, and with that information knew that his father was empowered merely to sell. The knowledge of the agent in this particular must be imputed to his principal.

"As to all of these transactions, respondent makes the objection, that as plaintiff had sued Hughes for a full accounting, and as such an accounting had been made, followed by a judgment and the satisfaction of plaintiff's right, the plaintiff must be held to his election, and cannot be allowed to recover the moneys due upon account of these sales and transfers from Hughes, and at the same time pursue the vendees and transferees for a recovery of the property. But this is not what plaintiff is doing. He sued his trustee, Hughes, for a general accounting, but at the same time specifically objected to and attacked certain of the trustee's dealings with the land. These were upheld by the court, and the value of the land, sales, and assignments charged against Hughes. But plaintiff has the unquestionable right, as has before been considered, to insist that he shall not be forced to take this judgment in money, but that he shall be permitted to recover the property which has been improperly or fraudulently disposed of. Nor can the fact that the court awarded plaintiff a monetary judgment be held to estop plaintiff or bind him to its acceptance.

"Respondent further urges and argues that Hughes's vendees and transferees may not thus be brought into court because Hughes became vested with the entire and absolute legal and beneficial ownership in the land, with full power of disposition

and control, and free from any trust, and that Chapman's sole relief is in a suit for an accounting or for a breach of contract. The cases which respondent cites in support of this proposition are those declaring the well-recognized and sound principle that no resulting trust arises to the grantor where the grantee takes upon a valuable consideration. (2 Perry on Trusts, sec. 151; *Gibson* v. *Armstrong*, 7 B. Mon. 489.) But in this case plaintiff is not suing to have a resulting trust declared in his favor, but he is suing to enforce his rights under an express trust formally declared by an instrument in writing.

"By the terms of the agreement between the parties, Hughes was to discharge the mortgage which he gave to Montgomery. Ten thousand dollars of this, it seems, has not been paid. Appellant insists that Hughes should be charged with this balance. That may in strictness be so, but if so charged upon the one hand, upon the other he must be credited with that amount as a payment, for, since upon the payment of the mortgage he was entitled to repayment from the proceeds of the sales of the property, if he is to be charged with this ten thousand dollars, provision must be made for reimbursing him.

"It is to be remembered that while this was originally a simple action by Chapman against Hughes for an accounting, it subsequently became complicated by supplemental pleadings and the addition of new parties defendants. Of these, one was the defendant E. W. Chapman, against whom Hughes was seeking an accounting, and others were grantees and transferees of parts of the land and of mortgages and of mortgage notes. Although these actions were consolidated and tried as one, and a single judgment entered, yet between these defendants there was no privity nor common interest. It would therefore be unjust to force a defendant who has established the validity of his purchase to litigate the matter anew because the findings of the court in some other respect not material to his rights have been successfully attacked.

"Therefore, in subservience of the ends of justice and the rights of the parties, it is ordered that the judgment appealed from be vacated. It is further ordered that a new trial be had upon the issues touching the right of Hughes to an accounting with E. W. Chapman; that if, after such hearing, the court shall determine that Hughes is entitled to an accounting, it shall take or order taken such an account, to the end that the sum

found due, if any, from E. W. Chapman to Hughes may be set off against the sum found due, if any, from Hughes to W. S. Chapman. It is further ordered and adjudged that the accounting between W. S. Chapman and Thomas E. Hughes be affirmed in all respects as settled by the court, and that his sales, transfers, and assignments of parts of the land, and of the proceeds of sales of parts of the land, be affirmed in all respects as found by the court, saving as to those mattters and as to those findings hereinabove considered as to which it has been declared that the findings are not sufficiently supported by the evidence. As to such transactions, a further accounting shall be had in accordance with the rulings of this court, upon which accounting proper evidence adduced by any of the parties shall be received and considered."

Henshaw, J., Temple, J., McFarland, J., Harrison, J., and Van Dyke, J., concurred.