BRADLEY LUMBER CO. v. BRADLEY COUNTY BANK et al.

(Circuit Court of Appeals, Eighth Circuit. May 2, 1913.)

No. 3,820.

1. BANKS AND BANKING (§ 161*)—COLLECTIONS—DRAFTS—MODE OF PAYMENT.

A bank, holding a draft for collection, is not authorized to accept anything but money in payment thereof.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 554-561, 564; Dec. Dig. § 161.*]

2. MONEY RECEIVED (§ 1*)—NATURE AND ELEMENTS OF ACTION.

An action for money received will only lie where the defendants have received money, the property of plaintiff, under such circumstances as to be obliged by natural justice, good conscience, right, and equity to refund.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. § 1; Dec. Dig. § 1.*]

3. MONEY RECEIVED (§ 12*)—MONEY PAID ON FALSE VOUCHER.

Plaintiff's manager having applied to a lumber company for a loan of $5,000, the lumber company borrowed the amount from defendant bank on a note signed by it and indorsed by A. and others, certain of its officers, depositing plaintiff's note for the same amount as collateral. On maturity of the note A., the secretary of the lumber company, drew on plaintiff's manager for $650, and on plaintiff, through the bank, for $4,-

492, the balance of the amount necessary to pay the loan; the draft on plaintiff being marked "Customer's Draft" and sent by the bank to its correspondent for collection. On presentation thereof to plaintiff's manager, he took up the draft by a voucher on plaintiff's home office at St. Louis, falsely stating that it was "to apply on timber purchased." This voucher was never seen by defendant bank, which, having been paid by its correspondent before the voucher was presented to plaintiff, credited the amount with the $650 draft on the lumber company's note, by which it was satisfied and surrendered. The books of plaintiff's branches in charge of such manager were audited in June and December, 1910, and in January, 1911; but the falsity of the voucher was not discovered until October of that year. On March 7, 1912, plaintiff sued to recover the money as having been paid under mistake of fact after the lumber company had become insolvent. *Held* that, plaintiff having been deceived by its own agent into paying the voucher, and defendant bank having collected the money as a mere agent of the drawer of the draft, without notice that it had been obtained on a false voucher, and the maker of the note to the bank having become insolvent, defendants could not be said to have money belonging to plaintiff, which in equity and good conscience they ought not to keep, and hence plaintiff could not recover.

[Ed. Note.—For other cases, see Money Received, Cent. Dig. §§ 38, 39; Dec. Dig. § 12.*]

In Error to the District Court of the United States for the Eastern District of Arkansas; Robert E. Lewis, Judge.

Action by the Bradley Lumber Company against the Bradley County Bank and others. From a judgment for defendants, plaintiff brings error. Affirmed.

Ratcliffe & Ratcliffe, of Little Rock, Ark., Luther E. Mackall, of Baltimore, Md., and Thomas C. Hennings, of St. Louis, Mo., for plaintiff in error.

John T. Hicks, of Little Rock, Ark., for defendant in error Colvin.

U. M. Rose, W. E. Hemingway, G. B. Rose, D. H. Cantrell, and J. F. Loughborough, all of Little Rock, Ark., for other defendants in error.

Before HOOK and SMITH, Circuit Judges, and VAN VALKEN-BURGH, District Judge.

SMITH, Circuit Judge. The Bradley Lumber Company, located at St. Louis, maintained lumber mills at Warren, Ark., and at Lumberton, Miss. It was a considerable purchaser of lumber lands in the vicinity of its mills. Mr. John F. Forsythe purchased for the plaintiff many of these lands and was manager of both the mills named. About the 1st of December, 1909, Mr. Forsythe applied to the Lagle Stave & Lumber Company, of Hermitage, Ark., for a loan of $5,000, and it made the loan, but to secure the money borrowed it from the defendant, the Bradley County Bank, on a note signed by the Lagle Stave & Lumber Company and indorsed by M. J. Anders, G. B. Colvin, and J. M. Adams. It is not clear whether the loan was made to Forsythe in his individual capacity, or to the Bradley Lumber Company; but the note by the Lagle Stave &. Lumber Company to the Bradley County Bank recites that one note of the Bradley Lumber Company for $5,-

000, with interest from December 12, 1909, at 10 per cent., due March 2, 1910, has been deposited as collateral security for the payment of the principal note. About March 17, 1910, by direction of Mr. Forsythe, Mr. M. J. Anders, who was secretary of the Lagle Stave & Lumber Company, and who had indorsed the note of that company to the Bradley County Bank, drew on Mr. Forsythe individually for $650, and on the Bradley Lumber Company, through the Bradley County Bank, for $4,492. Both drafts were paid, but the draft on the Bradley Lumber Company for $4,492 is the only one material here. The draft was dated at Hermitage, Ark., March 17, 1910, and called upon the Bradley Lumber Company to pay at sight to the order of the Bradley County Bank $4,492. This was plainly marked: "Customer's Draft." It was sent for collection by the Bradley County Bank to the Merchants' & Planters' Bank at Warren. Upon its presentation Mr. Forsythe took up the draft and issued to the Merchants' & Planters' Bank a voucher on the Bradley Lumber Company at St. Louis for the amount thereof. This voucher contained the following untrue statements:

"To take Jasper Anders draft—to apply on timber purchase—Cap Asst Vou [capital asset voucher] will be issued when deal is consummated."

On this same day the Merchants' & Planters' Bank forwarded the amount of the Anders draft to the Bradley County Bank and sent forward the voucher for collection, and it was subsequently paid on the 21st of March at St. Louis by the Chicago Lumber & Coal Company, who owned the Bradley Lumber Company, and was charged to its account. This voucher was never seen by the Bradley County Bank, who had been paid by the Merchants' & Planters' Bank long before it was presented to the Bradley Lumber Company, and neither the Bradley County Bank, the Lagle Stave & Lumber Company, M. J. Anders, G. B. Colvin, nor J. M. Adams had any knowledge that Forsythe had drawn on his company for the money by a false voucher.

[1] Of course, the Merchants' & Planters' Bank had no authority to receive in payment of this draft of Anders anything but money, and if they took this alleged false voucher they did it upon their own responsibility, and that fact was known at the time to Mr. Forsythe. After this money had been received by the Bradley County Bank, by an understanding with the Lagle Stave & Lumber Company and Mr. Anders it was credited upon the note of the Lagle Stave & Lumber Company; and, it being paid by such credit and an additional credit on account of the $650 draft drawn on John F. Forsythe, its note was satisfied and was surrendered to the maker.

The books of the Warren branch were audited in June or July, 1910, and again in December, 1910, and January, 1911, but the fact that this voucher was false was not discovered. About June or July, 1911, Mr. Forsythe ceased to act as manager at Warren, and was succeeded by Mr. J. L. Jamison; but Mr. Forsythe continued for some time as manager at Lumberton. Later he surrendered that position, and shortly thereafter died. The books were not again audited until in November, 1911. In the meantime, in October, 1911, the Bradley Lumber Company discovered the voucher was false; but not until March 7,

1912, was this suit brought to recover the amount of money as having been paid under a mistake of fact.

The Lagle Stave & Lumber Company, M. J. Anders, and J. M. Adams demurred to the complaint, and G. B. Colvin moved to strike his name from the complaint, which motion seems to have been treated as a demurrer, and these demurrers were all sustained. The case was then tried to a jury as against the Bradley County Bank, and at the conclusion of the evidence, both parties having asked a directed verdict, the jury, upon the direction of the court, returned a verdict for the Bradley County Bank, and the Bradley Lumber Company sued out a writ of error, assigning:

"First. The court erred in sustaining the demurrers of the defendants M. J. Anders, G. B. Colvin, and J. M. Adams to the complaint, and dismissing the complaint as to them and each of them.

"Second. The court erred in not directing a verdict for the plaintiff, Bradley Lumber Company, as requested by it.

"Third. The court erred in directing a verdict for the defendant Bradley County Bank.

"Fourth. That the court erred as a matter of law and fact in finding that 'there are equities on the part of the bank of such a substantial character that they are not overcome by the mere contention that it still has the right to go out and sue the makers, including the Lagle Company. It appears that, if it should sue and recover a judgment, it would be, in large part, at least, worthless. I feel that these facts are sufficient to defeat the equitable right, if it is so called, on behalf of the plaintiff to recover.'

"Fifth. The court erred in finding as a matter of fact that the plaintiff, Bradley Lumber Company, was guilty of laches in the premises.

"Sixth. The court erred in finding against the plaintiff upon the pleadings and evidence in said cause, and that said finding is contrary to law and the facts as stated in the pleadings and evidence in said cause."

There is no specification of errors in plaintiff's brief as required by rule 24 of this court. We will, however, without intimating that it will be done in other cases, consider briefly the errors assigned in the District Court.

Upon the trial it appeared that, at the time of the collection of the debt in question and the payment of the note of the Lagle Stave & Lumber Company, it was a going concern owning some hardwood and pine lands and a lumber mill and was worth $8,000. Just when it ceased to be solvent does not appear; but at the time of this suit its mill had been burned down, and it was worth, all told, from $100 to $125, aside from a claim in a bankrupt court at Cleveland, Ohio, amounting to about $600.

It is manifest that, if this draft had not been paid, the entire note could have been collected of the Lagle Stave & Lumber Company, and therefore nothing would have been collected from the indorsers who were upon it, Messrs. Anders, Colvin, and Adams. The mistake was in no sense attributable to the Bradley County Bank. It was in this transaction a mere agent for the collection of the Anders draft, and received the money as such agent, and subsequently by agreement credited it upon the Lagle Stave & Lumber Company note. The mistake was in no sense attributable to the Bradley County Bank, the Lagle Stave & Lumber Company, or to Anders, Colvin, or Adams. It was solely attributable to the misconduct of the plaintiff's agent,

who is now dead, and the information that the money was paid upon an untrue voucher was never communicated to any of the defendants for substantially two years, and for about five months after it was confessedly discovered.

[2] This was an action which at common law would have been assumpsit for money had and received. While this was an action at law, it was based upon the broad equities of the plaintiff. Such an action would lie if the defendants had received money, the property of the plaintiff, under such circumstances as to be obliged by natural justice, good conscience, right, and equity to refund. Bayne et al., Trustees, v. United States, 93 U. S. 642, 23 L. Ed. 997; United States v. State Bank, 96 U. S. 30, 24 L. Ed. 647; Merchants' Bank v. United States, 96 U. S. 36 note, 24 L. Ed. 648 note.

"Assumpsit for money had and received is an equitable action to recover back money which the defendant in justice ought not to retain, and it may be said that it lies in most, if not all, cases where the defendant has moneys of the plaintiff which, ex æquo et bono, he ought to refund." Nash v. Towne, 5 Wall. 689, 702, 18 L. Ed. 527.

In such cases, if the defendant may in good conscience retain the money in his hands, there can be no recovery. Barr v. Craig, 2 Dall. 151, 1 L. Ed. 327; Morris v. Tarin, 1 Dall. 147, 1 L. Ed. 76.

In Cary v. Curtis, 3 How. 235, 246, 11 L. Ed. 576, Mr. Justice Daniel said:

"The action of assumpsit for money had and received, it is said by Lord Mansfield (Burr. 1012, Moses v. MacFarlen), will lie in general whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by the ties of natural justice and equity to refund. And by Buller, Justice, in Stratton v. Rastall, 2 T. R. 370, 'that this action has been of late years extended on the principle of its being considered like a bill in equity, and therefore, in order to recover money in this form of action, the party must show that he has equity and conscience on his side, and could recover in a court of equity.' These are the general grounds of the action as given from high authority. There must be room for implication as between the parties to the action, and the recovery must be ex æquo et bono, or it can never be. If the action is to depend on the principles laid down by these judges, and especially by Buller, a case of hardship merely could scarcely be founded upon them; much less could one of injustice or oppression, nor even one which arose from irregularity or indiscretion in the plaintiff's own conduct. So far as the liability of agents in this form of action appears to have been considered, the general rule certainly is that the action should be brought against the principal, and not against a known agent, who is discharged from liability by a bona fide payment over to his principal, unless anterior to making payment over he shall have had notice from the plaintiff of his right and of his intention to claim the money. The absence of notice will be an exculpation of the agent in every instance. And with regard to the effect of the notice in fixing liability upon the agent, that effect is dependent on the known powers of the agent and the character of his agency. If, for instance, the agent was known to be a mere carrier or vehicle to transfer to his employer the amount received, payment to the agent with such knowledge, although accompanied with a denial of the justice of the demand, would seem to exclude every idea of an agreement express or implied on the part of the agent to refund, and could furnish no ground for this action against the agent who should pay over the fund received to his principal."

[3] It will be observed that the plaintiff company was deceived by its own agent into paying this voucher; that the Merchants' & Plant-

ers' Bank had no authority to accept anything but cash on the Anders draft, and in doing so it acted wholly upon its own responsibility, and this fact was well known to the plaintiff company's agent; that the money was remitted by the Merchants' & Planters' Bank three days before this voucher was ever presented; that the Bradley County Bank collected the money as a mere agent of Anders, and without any notice or knowledge of the matters complained of in effect turned the money over to Anders by crediting it upon the note on which he was indorser and surrendering the note; that subsequently the maker of the note became insolvent, and no one except those secondarily liable remained for the bank to sue; that for five months after the plaintiff discovered the fraud of its agent it gave no notice to the Bradley County Bank or any other of the defendants; that the parties can none of them be restored to statu quo if compelled to refund this money under such circumstances.

Quite persuasive upon this subject is the opinion of the Supreme Court of Michigan delivered by Cooley, Judge, in First Nat. Bank of Detroit v. Burkham, 32 Mich. 328. It is there said:

"The beauty and value of the rules governing commercial paper consist in their perfect certainty and reliability. They would be worse than useless if the ultimate responsibility for such paper, as between payee and drawee, both acting in good faith, could be made to depend on the motives which influenced the latter to honor the paper. The best view that can be taken of this case for the plaintiffs below is that there was a mutual mistake of fact under which the bank discounted and the drawees paid the bill. Conceding this, why should the drawees be allowed to transfer the loss to the bank? Usually, when one of two parties equally innocent must suffer, the law leaves the loss where it has chanced to fall; but in a case like this, if the law should assist either party on the ground of mutual mistake, it certainly should not be the drawees. This suit seeks to reverse the rule of commercial law, and transfer from the acceptor to the payee the responsibility which the former assumes by acceptance, and which the law leaves there."

Somewhat to a similar effect is the opinion of the Circuit Court of Appeals of the Second Circuit in Riverside Bank v. First Nat. Bank of Shenandoah, 74 Fed. 276, 20 C. C. A. 181, in which it is said:

"Upon principle, where the holder of a note presents it at the bank at which it is made payable, receives the money, and surrenders the paper, the transaction is, in effect, a purchase from the holder. It is a completed transaction, which cannot be rescinded, except for fraud, or in case of mutual mistake."

We are convinced that neither equity, good conscience, justice, nor right compels the defendants to refund, and the judgment of the District Court is affirmed.