GRACE HERLIHY, Respondent, *v.* INDEPENDENCE STATE BANK, Appellant.

310

(Argued January 28, 1933; decided April 11, 1933.)

*Edwin J. Lukas, Oswald Vischi* and *Alvin T. Sapinsley* for appellant. The acts of the defendant in applying the moneys received from the Tradesmen's Bank to the payment of the indebtedness of its depositor; in crediting the account of its depositor on its books with such payment to itself and in marking the note given by its depositor to it as paid, and returning the note were equivalent to a payment of the money to its depositor and the defendant should not be compelled to repay the money. (U. S. Codified Laws, § 8604, subd. R; Personal Property Law [Cons. Laws, ch. 41], § 222; *Archibald* v. *Banque,* 214 N. Y. Supp. 366; *Herrick* v. *Gallagher,* 60 Barb. 566; *Holland* v. *Russell,* 1 B. & S. 424; *Mowatt* v. *McLean,* 1 Wend. 173; *National Park Bank* v. *Seaboard Bank,* 114 N. Y. 28; *Home Realty Corp.* v. *Morrow,* 27 Ga. App. 385; *Carson* v. *Federal Reserve Bank,* 254 N. Y. 218; *Pratt* v. *Foote,* 9 N. Y. 463; *Allen* v. *Culver,* 3 Den. 284; *Crocker* v. *Whitney,* 71 N. Y. 161; *Arnot* v. *Bingham,* 55

Hun, 553; *Levine* v. *Field*, 114 N. Y. Supp. 819; *Bethune* v. *Neilson*, 2 Caines, 139; *Wilkinson* v. *Bradley Wilson & Co.*, 54 Ala. 677; *Partola Realty Co.* v. *Coralston*, 32 Cal. App. 282.) Defendant suffered a change of position prior to the notice of fraud. (*Smith* v. *Bank of Orleans*, 7 Hill, 595.)

*Lemuel Skidmore* for respondent. Defendant collected the proceeds of the draft as agent for its depositor. The money having been obtained through fraud on the part of the principals, the defendant, as agent, is liable to plaintiff, not having paid over the money to its principals nor changed its position since the receipt of the moneys and in reliance thereon. (*Herrick* v. *Gallagher*, 60 Barb. 566; *National Park Bank* v. *Seaboard Bank*, 114 N. Y. 28; *United States Nat. Bank* v. *National Park Bank*, 59 Hun, 495; 129 N. Y. 647; *Hearsey* v. *Pruyn*, 7 Johns. 179; *Carter* v. *Stork*, 18 N. Y. Supp. 467.) The fact that defendant retained the moneys received and credited them on its books on account of a prior indebtedness from its principals does not constitute a payment or change of position on the part of defendant nor affect plaintiff's right to recover the moneys paid by her assignor. (*Buller* v. *Harrison*, 2 Cowp. 565; *Carson* v. *Federal Reserve Bank*, 254 N. Y. 218; *Gosslin* v. *Martin*, 56 Ore. 281; *Cox* v. *Prentice*, 3 M. & S. 344; *Gray* v. *Callender*, 181 Ill. 173; *Smith* v. *Binder*, 75 Ill. 492; *Garland* v. *Salem Bank*, 9 Mass. 408.)

POUND, Ch. J. One Alexander Berman, acting as agent for an English firm, purchased on behalf of his principal 12,000 pounds of long horse tail hair from the Chicago firm of Smolin & Berger. In order to facilitate the purchase the English firm established in a bank in Philadelphia, where Berman lived, a letter of credit which was payable upon presentation of an ocean bill of lading for the goods. Smolin & Berger devised a fraudulent scheme to obtain payment for the goods without delivery.

They shipped from Chicago packages aggregating 12,000 pounds in weight and purporting to contain horse hair, but actually containing cheap cow body hair, and obtained from the railroad company a bill of lading for 12,000 pounds of horse hair. This bill of lading was not the " ocean " bill of lading called for by the letter of credit. In order to obtain the ocean bill of lading it was necessary to obtain the goods from the railroad company and then to·transship to Europe. Smolin & Berger were depositors in the defendant bank in Chicago. They were contingently liable as indorsers on trade acceptances, discounted in that bank for a large sum of money. On April 3d Smolin came to the bank with the railroad bill of lading purporting to represent a shipment of horse hair and a sight draft drawn on Berman for the purchase price of the goods, to wit, $3,790.72. On the same day one of the acceptances in the sum of $1,801 on which Smolin & Berger were contingently liable as indorsers became due, and they knew that they would be compelled to meet that liability. The defendant bank did not discount the draft on Berman, but loaned to Smolin & Berger the amount of that draft, receiving from Smolin & Berger a demand note for the same amount, and the draft with bill of lading attached as collateral. The understanding was that they would collect the draft as agent for Smolin & Berger. The amount of the loan was immediately credited to the account of Smolin & Berger. The contingent indebtedness of $1,801 was marked paid although the note was not surrendered, and the remainder of the sum was credited in the checking account.

The defendant bank, acting as agent for Smolin & Berger, sent the draft on Berman with bill of lading attached to the Tradesmen's National Bank for collection. They knew that the credit which the English firm had opened for more than the amount of this draft would become available as soon as the ocean bill of lading was

obtained. In order to obtain the ocean bill of lading it was, however, necessary to pay the draft, and thus secure possession of the goods. Berman accepted the draft and authorized the bank in Philadelphia to pay it, and thereafter to credit themselves with that payment from his account, secured by the letter of credit. They did so, and remitted the amount of the draft to the defendant. The defendant bank thereupon credited the loan account of Smolin & Berger and marked " paid " on its books their demand note, and Smolin & Berger drew checks against the remainder. Meanwhile Berman and the Philadelphia bank discovered the fraud which Smolin & Berger had perpetrated, and thereafter the Philadelphia bank demanded the return of the moneys paid to the defendant bank, claiming that such payment was made by reason of fraud on Berman and on the bank. Berman, though apparently innocent of the fraud, is insolvent and the draft which he accepted cannot be collected. The letter of credit is valueless because the Philadelphia bank, Berman and the English firm have all assigned their claims to the plaintiff who has recovered judgment in this action against the appellant, the Chicago bank, for the amount paid to it.

The appellant now contends that it received the money as agent for Smolin & Berger and that by reason of its application of the proceeds as directed by Smolin & Berger, it is not liable for the return of the money, even though its principal was guilty of fraud. It concedes, as it must, that the application of the proceeds to prior indebtedness of Smolin & Berger was done through book entries. Nevertheless, it contends that it effected payment to its principal through these book entries, and in any event as to the proceeds which came into the checking account of Smolin & Berger and were thereafter withdrawn, it has innocently changed its position.

The rule applicable to cases where an agent, instead of remitting the proceeds of collection directly to his prin-

cipal, merely credits the principal with the proceeds has been recently stated by this court as follows: " [Putting the proceeds into a deposit account] did not take from the defendant the protection of the rule that money paid to an agent, and lawfully accepted, may not thereafter be reclaimed by one who has made the payment with notice of the agency, if before the attempted reclamation the agent in good faith has settled with the principal. True, indeed, it is that the settlement sufficient to call this precept into play must be actual and not constructive. If all that the agent has done is to agree with the principal that the fund, still intact, shall be held thereafter as a debtor, he is not subjected to any loss if directed to make restitution out of the moneys thus retained. . On the other hand, when once the fund has been depleted by payment of the debt, the situation becomes the same as if the payment to the principal had been made at the beginning. The agent is no better off by reason of the new relation, but even if no better, he is equally no worse." (*Carson* v. *Federal Reserve Bank*, 254 N. Y. 218, 231.)

In this case we have the admission in appellant's answer that no part of said sum of $3,790.72 paid by Tradesmen's National Bank to defendant as aforesaid has been paid over by defendant to Smolin & Berger but said sum has been and still is retained by said defendant. Appellant's present position is that such pleading trnthfully states the fact of non-payment but that it has done something equivalent to the actual payment over to its principal, *i. e.*, that it has in some way changed its situation in regard thereto. We may disregard the technical objection to the pleading as too broadly admitting liability. The same admission, " We have not paid anything over to them " coupled with a claim that a change had taken place in the situation of the bank, was repeatedly made on the trial. If the change had been merely by way of paper credits which it may wipe out

without prejudice to its right to enforce its original claim, it has not altered its position by making such entries. The mere credits will not halt the pursuit and relieve from liability while the sum is still intact. If the fund has been disbursed the liability is ended. This sum has not been disbursed nor has any settlement been made thereon which forestalls plaintiff from recovery on the original indebtedness of Smolin & Berger.

The principal question involved in this appeal is whether there had been any change of position on the part of the defendant since the payment of the money to it and before it had notice of the fraud which would render a recovery by plaintiff inequitable. It admits that it has not actually paid the money over. It is enough if it has canceled a debt. But giving credit does not amount to the cancellation of a debt. The credit may be canceled and an action to recover the debt maintained.

The subject of change of position in quasi-contracts is complex and difficult. It is discussed in an article so entitled by Henry Cohen in 45 Harvard Law Review, 1333. The duty to refund moneys which in justice ought not to be kept rests on broad conceptions of equity. (*Moses* v. *MacFerlan*, 2 Burr. 1005.) An agent ought to refund his principal's money unless it would be unjust to require him to do so. A mere matter of bookkeeping ought not to defeat the right of recovery. The defendant in this case received money for its principal. It disbursed it through mere credits. No payment over was made. No actual cancellation of a debt. No surrender of an obligation. Those whom the principal has defrauded of the money seek to intercept the fund. When the book entries are canceled defendant will be restored to its original position. It ought not to profit by the dishonesty of its principal in such a case. Its legal position remains unchanged.

If the portion of the moneys which seem to have been withdrawn by check was actually paid to Smolin & Berger,

was actually drawn out by them before the bank had notice of the fraud, that would be payment to them, to the extent of the moneys withdrawn, but in view of the admission on the trial that nothing had been paid over to them and other evidence pointing to that conclusion, we must assume that the checks represented mere paper credits on account of antecedent indebtedness.

The judgment should be affirmed, with costs.

CRANE, LEHMAN, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not voting.

Judgment affirmed.