### Appellate Department, Superior Court, San Diego

[Civ. A. No. 153905.   Oct. 7, 1949.]

J. W. ZELLNER et al., Respondents, v. ARCHIE L. REEVE et al., Appellants.

Colin M. Gair, Jr., for Appellants.

Homer H. Bell for Respondents.

BURCH, J.—This is an appeal by the defendants from a judgment against them for $995. The complaint, so far as pertinent, avers that on June 7, 1947 (*sic*), the defendants were indebted to the plaintiffs in the sum of $2,000 for money had and received for the use and benefit of plaintiffs. The answer of C. D. Bandy and J. Claude Wilson deny each and every allegation contained in that cause of action, as does the answer of Archie L. Reeve and Roberta H. Reeve. From the judgment in favor of Bandy there is no appeal.

The findings of fact are that on or about June 7, 1947, defendants Archie L. Reeve, Roberta H. Reeve, and J. Claude Wilson, and each of them, became indebted to plaintiffs in the sum of $1,990, for money had and received by said defendants, and each of them, for the use and benefit of the plaintiffs; that on or about March 31, 1948, plaintiffs demanded payment thereof from defendants, and each of them; that no part of said sum has been paid. As conclusions of law the court found that plaintiffs are entitled to judgment against the defendants Archie L. Reeve and Roberta H. Reeve in the sum of $995, and are entitled to judgment against defendant J. Claude Wilson in the sum of $995, with interest on said sums from March 31, 1948, at the rate of 7 per cent (7%) per annum.

The plaintiffs introduced in evidence an "Offer to Purchase Real Estate," signed by J. W. Zellner as purchaser and

signed by Archie L. Reeve and Roberta H. Reeve as sellers. Among other things this document included a receipt of $2,000 for money paid to J. Claude Wilson as an agent, and stipulated that additional cash of $13,000 would be delivered,

". . . on or before 60 days from date; and balance of $14,500 to be paid at rate of $2000 per annum for 4 years when buyer will give a trust deed for $6500 payable $1300 per annum untill full amount of $29500 has been paid. Balance to bear interest at 5% per annum. Buyer has option of paying more instalments at any time. Furniture & tools included in price. Price includes 700 shares of Escondido Mutual Water Co. B stock, and crop now on the trees."

The document further stipulated time to be of the essence and that upon failure to complete the purchase according to the terms, the money paid on account "shall, at the option of the seller, be retained as liquidated damages."

We have read the record and are unable to see how the findings or the conclusions thereon are justified by the evidence or upon what theory the judgment in favor of plaintiffs for $995 against the sellers and for $995 against the agent can be sustained. J. W. Zellner acted for both plaintiffs.

As regards the sellers, the evidence shows that the money ($2,000) was paid in accordance with the written instrument introduced in evidence, and applied on account of the purchase money and that no other sums were paid by plaintiffs. Failure to pay the sum of $13,000 on the specified dates was a breach if a contract was made.

Plaintiff Zellner himself testified (Reporters Transcript, p. 7) with reference to the execution of the document as follows:

" I said, 'I may be sticking my neck out, but I think that deal ought to go through. They have been trying to buy it (my Los Angeles property) for about a year and a half.' . . . I laid the check on the table ($2,000.00 check). Mr. Wilson wrote out the offer to purchase and I then signed it."

At no place in the record is there any evidence of fraud, misrepresentation, or mistake. On the contrary, the evidence shows that the plaintiff Zellner himself wrote upon the $2,000 check, "Dep. on Reeve Property," and further, that he endeavored to dispose of his Los Angeles property with a view to raising the cash which he had become obligated to pay under the contract on August 9, 1947; that he maintained communication with the office of defendant Wilson as representative of the vendors, the Reeves; that he learned the crop had been

segregated to his use under the contract; that when he found he would be unable to keep his covenant to pay $13,000 on or before sixty (60) days, he accepted an informal extension of his obligation to the date of August 24, 1947. The defendants also considered themselves bound. Not only did they grant the extension, segregate the fruit and hold their property off the market, but they promptly, upon acceptance of the offer, deposited the $2,000 with the Bank of America as escrow agent, and signed escrow instructions as sellers in accordance with the terms of the contract, and sent a copy of the instructions to the plaintiffs for signature after notifying them of the acceptence of their offer. The plaintiff was the master of his own offer. Its terms are clear and explicit. When it was accepted in exact accordance with its terms a contract resulted. (Civ. Code, §§ 1584, 1585.)

We need not speculate upon whether his offer would have been accepted had plaintiff made it conditional upon the sale of his Los Angeles property, for, with the power to provide, he chose to make a firm offer. His testimony, which we have quoted, forcibly indicates his conscious intention to assume the risks of the future event. It is true that before making his offer he explained to Mr. Wilson that he expected to raise the money by the sale of his Los Angeles property, and it is also true that after he bound himself by contract he continued his efforts to that end and that his efforts failed. In the circumstances, a contract having been made, these efforts must be considered in relation to the contract as made, rather than to a condition the occurrence of which would have been necessary to create a contract.

In argument plaintiffs' main reliance is upon section 3275 of the Civil Code. That section provides:

"Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, *upon making full compensation to the other party,* except in case of a grossly negligent, willful, or fraudulent breach of duty." (Emphasis added.)

In the very recent decision of *Barkis* v. *Scott,* 34 Cal.2d 116 [208 P.2d 367], the court said:

"Section 3275 presupposes that the party seeking relief is in default, and in order to secure relief under its terms it is necessary for him to plead and prove facts that will justify its application. (Citations.) It has therefore consistently been

held in the absence of proof of such facts, that once his default is established the vendee cannot recover back the part payments he has made. (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, 11 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199].'' (Other citations.)

█ It is very clear upon reading the record here that the plaintiffs do not qualify for relief under section 3275. It is equally clear that no evidence whatsoever is offered to show that the vendors were in default. Equally important is the fact that the record contains no evidence from which the court could set off the damage, if any, which occurred to the vendors because of the breach. (Civ. Code, § 3307.) Hence the vendees have not proved that the vendors are unjustly enriched. (See *Barkis* v. *Scott*, 34 Cal.2d 116, 122, *supra*.)

█ The case against defendant Wilson is no better than that against the sellers. There is no evidence in the record of fraud, actual or constructive, nor of mistake. He applied the money received from the plaintiffs upon the contract for the account of the vendors, which accorded exactly with the purposes of the plaintiffs at the time. As to what claims Wilson may have had against the vendors, the record is silent, but once Wilson turned the money over to apply on the contract he ceased to be liable to plaintiffs except for mistake, collusion, or other fraud. (*Becsey* v. *California Title Insurance & Trust Co.*, 192 Cal. 632 [221 P. 356]; *Weiner* v. *Roof*, 10 Cal.2d 450 [74 P.2d 736]; *Weiner* v. *Roof*, 19 Cal.2d 748 [122 P.2d 896].) The fact that plaintiffs would not have been liable to the broker even after default (*Hunter* v. *Vernon*, 85 Cal.App.2d 525 [193 P.2d 139]) does not enlarge their rights against the broker or alter the rule of the Becsey case (*supra*).

For the reasons above given, the judgment is reversed.

Turrentine, P. J., and Glen, J., concurred.